**Curtis Keith DORSEY, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–85–168–CR.**

Court of Appeals of Texas,
Forth Worth.

July 31, 1986.

Hartley, Eakman & Bodenhamer and Glen E. Eakman, Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., and C. Chris Marshall and Mary Thornton Taylor, Asst. Crim. Dist. Attys., Fort Worth, for State.

Before JORDAN, BURDOCK and ASHWORTH (Retired, Sitting by Assignment), JJ.

## OPINION

BURDOCK, Justice.

Appellant, Curtis Keith Dorsey, was convicted upon a plea of guilty of aggravated manufacture of amphetamine and sentenced to twelve years confinement. *See* TEX. REV. CIV. STAT. ANN. art. 4476–15, sec. 4.032(c) and (d)(2) (Vernon Supp.1986).

We affirm.

By two grounds of error, appellant contends the trial court erred in overruling his motion to suppress evidence due to the reason that the affidavit in support of the search warrant was insufficient to support a finding of probable cause under (1) U.S. CONST. amends. IV and XIV, and (2) TEX. CONST. art. I, sec. 9.

Initially, we will consider the State's contention that appellant has failed to perfect his right to appeal. TEX. CODE CRIM. PROC. ANN. art. 44.02 (Vernon 1979) provides that when a defendant has been convicted upon a plea of guilty, he may nevertheless appeal such conviction when the court assesses punishment and the punishment does not exceed the punishment recommended by the prosecutor and agreed to by the defendant and his attorney.

The statute places a burden on one who would appeal from a negotiated proceeding before the court to make manifest upon the record the following requisites in order to invoke the jurisdiction of the appellate court under the proviso: (1) existence of a plea bargaining agreement with the State; (2) punishment assessed by the trial court at or within that recommended by the prosecutor and agreed to personally by the defendant; (3) the basis of the appellate ground of error has been presented in writing, pretrial, to the trial court for consideration, or the trial court has given permission to pursue an appeal in general or upon specific contentions. *Galitz v. State*, 617 S.W.2d 949, 951–52 (Tex.Crim.App.1981) (en banc).

The State contends that appellant failed to meet his burden to show that he personally agreed to the punishment recommended by the prosecutor. The record pertinent to a determination of whether appellant met this burden is set out as follows:

THE COURT: Mr. Dorsey, to the indictment you may plead guilty or not guilty, how do you plead?

MR. DORSEY: Guilty.

THE COURT: Now, do you both understand upon your plea of guilty I am going to have to find you guilty and I'm going to have to assess your punishment in this case somewhere within a range of not less than ten nor more than ninety-nine years or life in the penitentiary, and in addition to that, I could assess a fine not to exceed a Hundred Thousand Dollars.... Do you understand the range of punishment in your case Mr. Dorsey?

[MR. DORSEY:] Yes, sir.

THE COURT: Do you both understand that any agreement that's been reached between you, your lawyers and lawyer for the State is not binding on me and I could reject any recommendation that the State might make in either of your two cases and assess your punishment anywhere within the full range I have just outlined to you. Do you both understand that?

MR. HOOPER [Co-defendant]: Yes, sir.

MR. DORSEY: Yes, sir.

THE COURT: Do you understand if the State makes a recommendation in this case and I reject it that is I assess your punishment at more than the State's recommendation you could have your lawyers file a Motion for New Trial, I would grant it, and we would start all over again. Do you each one understand that?

MR. HOOPER: Yes, sir.

MR. DORSEY: Yes, sir.

After admonishing appellant and his co-defendant concerning their guilty pleas, the trial judge continued:

THE COURT: I'm going to accept your plea of guilty, Mr. Hooper, and I'll accept your plea of guilty, Mr. Dorsey.

THE COURT: Let's hear from the State.

MR. BLANKENSHIP: The State in return for the plea of guilty by both defendants would recommend a sentence of twelve years in the Texas Department of Corrections.

Whereupon, the stipulated evidence was read into the record and the court pronounced judgment:

Do either of you have any good and lawful reason why I should not pronounce sentence at this time? I'll ask you first Mr. Hooper?

MR. HOOPER: No, sir.

THE COURT: I'll ask you next, Mr. Dorsey?

MR. DORSEY: No, sir.

THE COURT: ... Mr. Dorsey, having pronounced your sentence at twelve years confinement in the Texas Department of Corrections and you having had no good and lawful reason why I should not assess sentence at this time it is the order, judgment and decree of this Court that you be remanded to the custody of the Sheriff of Tarrant County to be transported to the Texas Department of Corrections at Huntsville, Texas there to serve twelve years in the State Penitentiary.

The record in the instant case reveals that the prosecutor recommended a certain punishment, that the recommendation was followed by the court, and that the basis of appellant's ground of error was presented, pretrial and in writing, to the court. There is some question, however, whether the record is sufficient to show that the recommended punishment had been agreed upon by appellant.

■ Inasmuch as the trial judge referred to "any agreement that's been reached between you [appellant], your lawyers and lawyer for the State," there is some indication that the punishment recommended and assessed by the court was personally agreed to by appellant. Further, appellant was given an opportunity after the State's recommendation and before punishment was assessed, to give any "good and lawful" reason why the judge should not at that time pronounce sentence. In the absence of any objection by appellant and by inference from the record as a whole, we hold the record is sufficient to show appellant agreed to the sentence recommended and assessed.

Accordingly, we have reviewed the record in order to determine whether the affidavit was sufficient to support a finding of probable cause under the federal and state constitutions. The thrust of appellant's argument in this regard is that the informant's tip did not meet the requirements of *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) for establishing probable cause. The State counters that the informant's tip was not the sole basis relied upon to establish probable cause to issue the search warrant; it was used to set up surveillance at appellant's residence, for which probable cause was not required.

The affidavit used to support the issuance of the search warrant is set out as follows:

My name is M.E. Shaw and I am a peace officer with the City of Grand Prairie, assigned to the Greater Dallas Area Organized Crime Task Force, with the responsib[i]lities of investigations involving narcotic trafficking and clandestine laboratory operations.

On June 1, 1983, Affiant was advised by Investigator Johnny Prince, Department of Public Safety, Narcotics, that a confidential informant had advised him that Curtis Dorsey was illegally manufacturing a controlled substance, Amphetamine, for Michael Ray Sinquefield, and that the illicit laboratory was located in the northern part of Tarrant County. The Affiant has personal knowledge that Michael Ray Sinquefield is a known narcotic offender, involved in the illegal manufacture of Amphetamine, and is currently under indictment in Parker County for Manufacturing a Controlled Substance, a violation of the Texas Controlled Substance Act. On October 25, 1983, Affiant and other investigators executed a search warrant in Plano Texas at the residence of Michael Patrick Pempsell and Susan Storer Sixkiller. At that time, Investigators seized an operating Amphetamine laboratory and approximately ten pounds of Amphetamine. Found along with other documents in the house was a Texas Motor Vehicle Title, a license plate reciept, [sic] and a security

agreement from Northeast National Bank, all in the name of Curtis Dorsey. During the month of November, 1983 periodic surveillance was set up at the residence of Freddie R. Hooper (said suspected place) a known associate of Curtis Dorsey. During this surveillance, Sgt. B.P. Whitfield, of the Fort Worth Police Department, advised the Affiant that he observed both Dorsey and Hooper drive up to the said suspected place in a black over white Chevrolet El Camino. Sgt. Whitfield further stated that he observed Dorsey and Hooper remove a large and heavy brown cardboard drum from the bed of the truck and carry it to an outbuilding behind the residence. Sgt. Whitfield stated to Affiant that the drum was of the same size, shape, color, and appearance of a 110 pound drum of Phenylacetic Acid. Sgt. Whitfield has seen in the past at clandestine laboratories, the same type of container, which in fact contained Phenylacetic Acid[.] Affiant knows from past experience in clandestine laboratories that Phenylacetic Acid is commonly used in the preliminary stages of illegal Amphetamine manufacture. Sgt. Whitfield also advised that the Chevrolet El Camino was registered to Curtis Dorsey.

On December 9, 1983, surveillance was initiated on Curtis Dorsey. Dorsey was observed by Affiant to travel to Metroplex Chemical and Laboratory equipment Company in Dallas, Texas, arriving at 3:15 PM. Dorsey was driving a 1977 Oldsmobile 442, bronze and white in color, Texas License Plates ZTD–673. (Affiant has been advised by Fort Worth Police Officer P.L. Williams that on August 29, 1983, the same Oldsmobile 442 was observed at the residence of Michael Ray Sinquefield in Hurst, Texas.) Curtis Dorsey was observed by Affiant and surveillance officers to enter Metroplex Chemical Company and leave a short time later carrying a metal ring stand and a small metal cylinder. Affiant knows from past experience in clandestine laboratory investigations that Hydrogen Chloride gas is commonly pack-

aged in small metal cylinders of the same size and shape observed in this instance and that Hydrogen Chloride gas is commonly used in the final stage of illegal amphetamine manufacture. Affiant also knows that ring stands are commonly used in clandestine laboratories to hold items of glassware. Affiant also knows from past experience in laboratory investigations that Metroplex Chemical Company sell all the precursor chemicals and glassware necessary to illegally manufacture amphetamine.

Surveillance officers followed Dorsey from Metroplex Chemical Company until Dorsey was lost in traffic. Other surveillance officers, including Investigator Mike Dunn, Texas Department of Public Safety Narcotics Service, and Mike Camp, Fort Worth Police Officer set up surveillance at said suspected place. Dorsey was observed by Investigator Dunn and Officer Camp to arrive at said suspected place, driving the Oldsmobile 442 at 4:20 PM on December 9, 1983. Investigator Dunn also observed Dorsey and Freddie Hooper in the backyard area around a wooden attached room at back of residence. Investigator Dunn also observed Dorsey unload a container wrapped in black plastic from the bed of a red and white pickup at rear of residence and carry it to the attached room. Investigator Dunn advised affiant that the container appeared to be heavy and have the shape of a five gallon can. Affiant and Investigator Dunn both know from personal experience in investigation of other clandestine laboratories that five gallon cans of ether are commonly packaged in plastic trash bags and that ether along with Hydrogen Chloride gas is commonly used in the final stage of illegal Amphetamine manufacture.

At 5:15 PM on December 9, 1983, Investigator Camp observed a dark brown Chevrolet pickup arrive at said suspected place and back up to front door. Investigator Camp also observed two subjects unload several cardboard boxes and four gray colored heavy duty metal cans of

approximately five gallon size which appeared to be heavy and carry these items into the residence of said suspected place. Affiant knows from past experience in clandestine laboratory investigations that local chemical companies such as Scientific Industrial Chemical Company in Fort Worth sell ether in gray colored five gallon metal cans. Continued surveillance has noted that all subjects are now remaining in the residence.

■ Viewing the validity of the search warrant according to the totality of the circumstances, as we must, we hold that, on the basis of the above affidavit, the issuing magistrate had a "substantial basis" for concluding that probable cause existed. *See Gates*, 462 U.S. at 238, 103 S.Ct. at 2332. Police officers knowledgeable in the operation of clandestine amphetamine laboratories and acting upon an informant's tip, found evidence linking appellant with a known drug offender, and observed appellant buy and unload a combination of chemicals and lab equipment consistent with such manufacture. These facts, combined with the overall sequence of events as set out in the affidavit, are sufficient to uphold the trial court's overruling of appellant's motion to suppress. *See Layton v. State*, 625 S.W.2d 837, 838 (Tex.App.—Houston [14th Dist.] 1981, no pet.)

We do not find this court's holding in *Correll v. State*, 696 S.W.2d 297 (Tex.App.—Fort Worth 1985, pet. pending), controlling here for the reasons that (1) the informant's tip here was not the sole basis relied upon to establish probable cause, as in *Correll*, and (2) the sequence of purchase and transport of a particular combination of chemicals and equipment known to be consistent with the manufacture of amphetamine, observed by police officers here, amounted to a higher degree of suspicious activity than did the "innocent" activity observed in *Correll* (checking into a particular motel room at a particular time). *Id.* at 298–99.

For the reasons stated, we overrule appellant's two grounds of error and affirm the judgment of the trial court.